## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES McREYNOLDS, PATRICIA BUTLER and RICHARD HYDER, individually, and on behalf of all others similarly situated, | ) ) ) ) | Case No. CV08-335-S-EJL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM ORDER |
| | ) | |
| LOWE'S COMPANIES, INC., a North Carolina corporation, and LOWE'S HIW, INC., a Washington corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are Defendant's motion to dismiss for lack of personal jurisdiction and motion to strike. The parties have submitted their responsive briefing and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2).

### Factual and Procedural Background

Plaintiffs James McReynolds, Patricia Butler, and Richard Hyder, initiated this action against Defendants Lowe's Companies, Inc. ("Lowe's") and Lowe's HIW, Inc. ("Lowe's HIW"), alleging age discrimination. This action relates to alleged age discrimination practices against employees who are forty years old and older. The Complaint raises claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the corollary state law, the Idaho Human

Rights Act ("IHRA"), Idaho Code § 67-5909.  The Plaintiffs all live in the State of Idaho.  Lowe's is a corporation incorporated in North Carolina.  Lowe's HIW is a corporation incorporated under the laws of the State of Washington and registered to do business in the State of Idaho.  Lowe's has filed the instant motion to dismiss claiming this Court lacks personal jurisdiction over it as it has no contacts with the state of Idaho.  Lowe's has also filed a motion to strike certain affidavits and exhibits filed by Plaintiffs.

### Standard of Law

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process."  Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994) (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  The Ninth Circuit has previously recognized that the Idaho Legislature intended in adopting the long arm statute to exercise all of the jurisdiction available under the Due Process Clause.  Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (citing Doggett v. Electronics Corp. of Am., 454 P.2d 63, 67 (Idaho 1969)).  Thus, the state and federal limits are co-extensive, and an independent review of whether jurisdiction exists under the long arm statute is unnecessary and only the second due process part of the test need be analyzed.  Id.; Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1286; Chan, 39 F.3d at 1405 ("Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.") (citing International Shoe v. Washington, 326 U.S. 310 (1945)).

Personal jurisdiction may be obtained over a defendant where either specific or general

jurisdiction are found to exist.  General jurisdiction subjects a foreign defendant to suit within the forum state even on matters unrelated to its contacts with the forum.  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001).  General jurisdiction requires a two-part inquiry: (1) whether defendant has "systematic and continuous contacts" with Idaho; and (2) whether the assertion of general jurisdiction is reasonable.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851 (9th Cir. 1993). Even if "continuous and systematic, contacts exist, the assertion of general jurisdiction must be reasonable." Gator.com Corp. v. L.L. Bean, 341 F.3d 1072, 1079-80 (9th Cir. 2003) (citing Amoco, 1 F.3d at 852-53).

The Plaintiffs have the burden of establishing that Defendant has systematic and continuous contacts with the forum state.  See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002); Unocal, 248 F.3d at 923.  The standard for establishing general jurisdiction is "fairly high," requiring defendant's contacts in the state to be of a sort that "approximate physical presence" within the forum state.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  Conceptually, plaintiff must establish that the defendant has been conducting business in Idaho, not merely with Idaho.  See Bancroft, 223 F.3d at 1086.

A court may also assert specific, or limited, jurisdiction over a cause of action that arises out of a defendant's forum-related activities.  Panavision Inter. v. L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  The test for specific personal jurisdiction has three parts: (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.  Id. (citation omitted); see also Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475-76 (1985).  Each of these requirements must be met for jurisdiction

to comply with due process.  Doe v. American Nat. Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).

Because this motion is resolved without a hearing, the United States need only make out a

prima facie case to withstand a motion to dismiss for lack of personal jurisdiction.  See Unocal, 248

F.3d at 922; Data Disc, 557 F.2d at 1285.  This requires that the Plaintiff demonstrate facts that, if

taken as true, would support exercising jurisdiction over the Defendants.  Id.  "Although the plaintiff

cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the

complaint must be taken as true."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800

(9th Cir. 2004) (citations omitted).  Factual conflicts between the parties contained in their affidavits

are resolved in the plaintiff's favor.  See Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir.

2002);  AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

Defendant, on the other hand, has the burden of establishing that exercise of jurisdiction over

it is unreasonable.  Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851 (9th Cir.

1993).  To determine whether exercise of jurisdiction is reasonable, the following seven factors are

balanced: (1) the extent of defendant's purposeful interjection into the forum; (2) the burden on the

defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of defendant's

state; (4) the forum state's interest in adjudicating the issue; (5) the most efficient judicial resolution

of the dispute; (6) the importance of the forum to plaintiff's interest in convenient and effective

relief; and (7) the existence of an alternate forum.  Id.

### Discussion

Lowe's HIW is a subsidiary corporation of Lowe's having substantial contacts with the state

of Idaho.[1]  Lowe's filed this motion to dismiss for lack of personal jurisdiction pursuant to Federal

---

[1]  These parties do not appear to dispute that this Court has personal jurisdiction over Lowe's HIW.

Rules of Civil Procedure 12(b)(2) and (3).  As a company incorporated and organized under the laws of North Carolina with its principal place of business located in Mooresville, North Carolina, Lowe's contends personal jurisdiction in this District cannot lie because: (1) it has never made, used, sold, or offered for sale products in Idaho; (2) it has no place of business or property in Idaho; (3) it is not licensed or qualified to do business in Idaho; (4) it does not pay taxes to the State of Idaho; and (5) it neither owns nor operates the retail locations that do business as Lowe's HIW.  Lowe's argues it is merely a "holding company" of Lowe's HIW.  In response, Plaintiffs argue that Lowe's HIW is the alter ego or general agent of Lowe's and its contacts giving rise to personal jurisdiction in Idaho should be imputed upon Lowe's.  Alternatively, Plaintiffs contend specific jurisdiction over Lowe's exists.  Lowe's maintains that neither general nor specific jurisdiction exist.

I.      Personal Jurisdiction Over Lowe's in Idaho

        "Where, as here, the defendant's alleged contacts are through its corporate subsidiaries, the Court must engage in a preliminary inquiry to determine whether the subsidiaries contacts are properly attributed to the defendant." Unocal, 248 F.3d at 925.  The parent-subsidiary relationship itself is not sufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) (citing Unocal, 248 F.3d at 925).  An exception to this general rule exists where the subsidiary is the alter ego or agent of the parent entity. See Unocal, 248 F.3d at 925 ("if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation").  "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs of daily operations." Unocal, 248 F.3d at 926 (citation omitted).

        In this case, Plaintiffs point to several reasons to suppport its argument that Lowe's HIW is

an alter ego and/or general agent of Lowe's including : that Lowe's represents to consumers, investors, and the United States Government that it operates over 1,500 improvement centers in all fifty states and Canada including eight stores in Idaho. Plaintiffs point to Lowe's consolidated financial information filed with the United States Securities and Exchange Commission which includes the financial performance of its subsidiaries. Lowe's also, Plaintiffs argue, institutes personnel actions and practices discriminating against older employees by effectuating a strategy through its "centralized performance appraisal system and ratings, its policy and practice of selection for management training, and its promotion, pay and termination policies, practices and decisions, all of which are implemented in the State of Idaho." (Dkt. No. 16, p. 2).

Lowe's disputes the Plaintiff's allegations regarding the relationship between itself and Lowe's HIW contending the two entities are "separate and distinct companies that observe all corporate formalities." (Dkt. No. 28, p. 1). Because Lowe's HIW controls the day-to-day operations of its stores, Lowe's argues the conduct of Lowe's HIW cannot be imputed upon it for jurisdictional purposes.

A.    Alter Ego Theory

"To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" Unocal, 248 F.3d at 926 (citing American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996)). "The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" Id.

(Calvert v. Huckins, 875 F.Supp. 674, 678 (E.D.Cal. 1995)).  The test is also satisfied "where the record indicates that the parent dictates every facet of the subsidiary's business-from broad policy decisions to routine matters of day-to-day operation."  Id. (citations and marks omitted).

      B.      General Agent Theory

Generally "courts cannot look to the activities of an affiliated corporation for the purpose of determining whether its parent corporation was 'doing business' in a state.  However, courts have permitted the imputation of contacts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.'" Chan, 39 F.3d at 1406 (citations omitted) (holding that the question of whether the parent corporation used the subsidiary corporation as its general agent turned on facts that were not contained in the record and remanded the case to the district court to make further findings).  "The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" Unocal, 248 F.3d at 928 (citing Chan, 39 F.3d at 1405) (quoting Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 423 (9th Cir. 1977)). "The question to ask is not whether the ... subsidiaries can formally accept orders for their parent, but rather whether, in the truest sense, the subsidiaries' presence substitutes for the presence of the parent." Gallagher v. Mazda Motor of America, Inc., 781 F.Supp. 1079, 1083-84 (E.D.Pa. 1992) (citation omitted).  The Gallagher court drew a distinction between the agency relationship a parent has with its subsidiary, where the contacts of the subsidiary could be imputed to the parent, and a holding company, where imputing the contacts of the subsidiary would be improper.  See Unocal, 248 F.3d at 929 (discussing Gallagher).  In defining a general agent, the Ninth Circuit has stated "a

foreign corporation is doing business in [the forum] in the traditional sense when its [forum] representative provides services beyond mere solicitation and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." <u>Chan</u>, 39 F.3d 1406 (citations and quotations omitted). "[W]hether the general agent was a subsidiary of the principal or independently owned is irrelevant." <u>Wells Fargo</u>, 556 F.2d at 423.

Here, Lowe's claims it is merely a holding company and the contacts of Lowe's HIW should not be imputed upon it as a basis for personal jurisdiction in Idaho. Plaintiffs argue that Lowe's HIW is a general agent for Lowe's because it performs sufficiently important services to the parent company that were Lowe's HIW not to do so, Lowe's would undertake and perform substantially similar services. Plaintiffs point to Lowe's website[2], fiscal year report, and annual report to shareholders that it operates stores in all fifty states and is a "centrally managed company." (Dkt. No. 16, p. 6). Lowe's financial reporting system, Plaintiffs argue, further evidences the agency relationship as Lowe's reports the revenues, expenses, and profits generated by its improvement centers located in Idaho. Plaintiffs further assert that only Lowe's finances the operations of all of its stores including Lowe's HIW.

Plaintiffs also point to the "nearly identical management structures of Lowe's and its subsidiaries" as further evidence of the agency relationship management structure of the two entities. This overlapping management structure, Plaintiffs argue, allows Lowe's to exert its control over Lowe's HIW as a "centrally managed company" as stated in Lowe's reports. Public statements issued by Lowe's reflect its control over the improvement stores by determining "where and when

---

[2] The Plaintiffs' reliance upon information from Lowe's website is questioned in Lowe's motion to strike as addressed later in this opinion.

its stores open, determines the prices that those stores charge consumers, requires the stores to provide discounts with respect to competitors' prices, controls the inventory make-up of those stores, and dictates the layout and ongoing maintenance of those stores.  Lowe[']s maintains tight and rigid control over the day-to-day operations of the home improvement centers that bear its name." (Dkt. No. 16, p. 11).  Plaintiffs further argue Lowe's identifies consumer demographics and instituting controls over the facilities including offering prices and sales; controlling the distribution network; dictating personnel policies, practices and procedures; providing employee training; and requiring terminations and promotions decisions to be passed through Lowe's offices; maintaining connectivity of the stores via a company-wide intranet.

     C.        Conclusion

     In reviewing the record in this case the Court finds that the Plaintiffs have made out a prima facie case sufficient to withstand the motion to dismiss.  A prima facie showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction.  See WNS, Inc. v. Farron, 884 F.2d 200, 203-04 (5th Cir. 1989); Fujitsu-ICL Sys. Inc. v. Efmark Serv. Co., No. 00-CV-0777-W-(LSP), 2000 WL 1409760, at *3 (S.D.Cal. June 29,2000) ("a prima facie showing means that plaintiff has produced admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction") (emphasis added).  Lowe's HIW is a wholly-owned subsidiary of Lowe's operating several retail stores in Idaho.  Lowe's, and its subsidiaries, is "the world's second largest home improvement retailer" operating "1,534 stores in 50 states and Canada, with 174 million square feet of retail selling space." (Dkt. No. 20, Ex. A, Lowe's 2008 Form 10-K).  The sheer breath of Lowe's wing-span over the world of home improvement is not alone sufficient to impose personal jurisdiction upon the company, however, the lack of any apparent separation between the two entities is

sufficient.

Lowe's SEC Forms make no distinction between Lowe's and its subsidiaries, collectively referring to both as "the Company." (Dkt. No. 20, Ex. A, p. 6). Just the opposite, Lowe's lays claim to all of the Lowe's branded stores as its own including expansion of new store locations and investments in existing stores. The SEC Forms reflect the lack of distinction or separation between Lowe's and its subsidiaries when it discusses the physical structure, marketing, distribution, product and brand selection, and several other key aspects of the retail stores' functions. (Dkt. No. 20, Ex. A). As such, the contacts of Lowe's HIW in Idaho are properly imputed upon Lowe's to establish a basis for exercising personal jurisdiction over both entities here in Idaho. These factors also demonstrate that Lowe's should reasonably have anticipated being brought into court in Idaho.

Further, the Court finds exercising jurisdiction over Lowe's is reasonable and consistent with traditional notions of fair play and substantial justice. Lowe's will not be unduly burdened in having to litigate this case in Idaho. It does not appear that there is a conflict with other states nor that there is a more reasonable alternative forum. Idaho has an interest in adjudicating the issues in this case as it will impact the Plaintiffs who are citizens of Idaho and who have allegedly been wronged in the state of Idaho. The Plaintiffs' interest in an efficient, convenient, and effective resolution of this matter and any relief that may result therefrom is weighty. As such, the exercise of jurisdiction over Lowe's in Idaho is reasonable.

II.   <u>Motion to Strike</u>

A.   Standard for Considering Affidavits

"It is well established that the Court may consider affidavits and other materials when weighing a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) without

transforming the motion into a Motion for Summary Judgment." Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc., 252 F.Supp.2d 917, 922 (D. Ariz. 2003) (citing Unocal, 248 F.3d at 922) (citation omitted).  In Rule 12(b)(2) motions, "[t]he court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." Id. (citations omitted).  "In fact, a plaintiff, in defending itself against a motion to dismiss for lack of personal jurisdiction is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Id. (citations and quotations omitted).

"An affidavit, however, should be based on personal knowledge and its allegations should not contain ultimate or conclusory facts and conclusions of law." DBSI Signature Place, LLC v. BL Greensboro, L.P., 392 F.Supp.2d 1206, 1210 (D. Idaho 2005) (granting motion to strike as to statement in affidavit containing a legal conclusion) (citation omitted).  "It is equally as clear...that Plaintiffs['] affidavits and exhibits submitted in support of the Response to the [motion to dismiss] must comply with the Rules of Evidence." Travelers, 252 F.Supp.2d at 923 (citation omitted).  The allegations contained in the affidavits and pleadings may not be merely conclusory, but rather, must assert particular facts which establish the necessary ties between the defendant and the forum state. Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1208 n. 5 (9th Cir. 1980); Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986)) ("[The Court is] not bound to accept as true a legal conclusion couched as a factual allegation.").  Finally, the court must weigh the substantiated pleadings and declarations in the light most favorable to plaintiff and resolve all factual disputes in plaintiff's favor. Data Disc, 557 F.2d at 1285.

B.      Affidavit of Plaintiffs' Counsel William H. Thomas

Lowe's objects to Plaintiffs' Exhibits F, G, I, and L - W which are attached to the affidavit

of Plaintiffs' counsel in response to the motion to dismiss arguing they are unauthenticated. Plaintiffs' counsel purports to authenticate the documents by stating that he obtained them from Lowe's website.  Lowe's seeks to strike these exhibits arguing Plaintiffs' counsel has no personal knowledge of who maintains the website, who authored the documents, or the accuracy of their contents as required by Federal Rule of Evidence Rule 901(a).  Rule 901(a) states that documents are sufficiently authenticated by evidence that will support a finding that they are what their proponent claims them to be.  Fed. R. Evid. 901(a).  When it comes to information from a website, "[a]nyone can put anything on the internet...[and] hackers can adulterate the content on any web-site from any location at any time."  Wady v. Provident Life and Accident Ins. Co. of America, 216 F.Supp.2d 1060, 1064 (C.D. Cal. 2002).  Thus, authentication requires that someone with knowledge of the accuracy of the contents of the internet print-outs to testify as to the authenticity of the content.  See In re Homestore.com, Inc., Securities Litigation, 347 F.Supp.2d 769, 782 (C.D. Cal. 2004).

This Court agrees that Plaintiffs' counsel's affidavit does not authenticate these documents as statements of Lowe's.  See Wady, 216 F.Supp.2d at 1064-65 (citing United States v. Jackson, 208 F.3d 633, 638 (7th Cir. 2000) (finding that evidence taken from the Internet lacked authentication where the proponent was unable to show that the information had been posted by the organizations to which she attributed it); St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F.Supp.2d 773, 775 (S.D. Tex. 1999) ( "Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing..."))  As such the Court will grant the motion to strike for purposes

of this motion.  The motion, however, does not seek to strike the other Exhibits which appear to be derived from the websites for the U.S. Securities and Exchange Commission, and the Secretary of States for Idaho, Washington, and North Carolina.[3]  As such, these Exhibits were considered by the Court in ruling upon this motion.

        C.        Affidavits of Plaintiffs

Lowe's also seeks to strike the Affidavits of James McReynolds and Richard Hyder arguing they are not based on admissible evidence.  Specifically, Lowe's asserts the Affidavits are conclusory, without personal knowledge and/or foundation, lack specificity, and contain hearsay. To the extent the affidavits contain inadmissible evidence, the Court did not rely upon the affidavits.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** that Defendant Lowe's Motions to Dismiss (Dkt. Nos. 5, 15) are **DENIED**.  Defendant's Motion to Strike (Dkt. No. 29) is **GRANTED IN PART AND DENIED IN PART**.

DATED:  **December 12, 2008**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

---

[3]   Exhibit K, however, is obtained from the website www.shareholder.com which is the source of Exhibits F and I to which Lowe's has also objected.  The website states it is designed to help "facilitate communication and increase transparency among listed companies, their shareholders and the investment community."  Exhibit K is a list of the Executive Management members of Lowe's which is located under the Investor Relations link of the website www.lowes.com.